**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT BITTINGER, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-10-1745 |
| | § | |
| WELLS FARGO BANK NA, *In Its* | § | |
| *Name and as Trustee for the Certificate* | § | |
| *Holders of Soundview Home Loan Trust* | § | |
| *2007-OPTI, Asset-Backed Certificates* | § | |
| *Series 2007-OPTI, et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER GRANTING MOTIONS TO DISMISS**

This case arises out of a nonjudicial foreclosure on a home.  The plaintiff, Robert Bittinger,

the mortgagee, sued a number of defendants, alleging an "undisclosed hidden illegal scheme created

by the Defendants and other unknown third parties to issue unregulated securities (mortgage backed

securities) based upon the negotiation of non-negotiable notes, the terms of which had been changed,

altered, amended or modified AFTER the execution by the Plaintiff."  (Docket Entry No. 1, ¶ 41).

Bittinger alleges that after he obtained the mortgage on his home in 2007, the lender and trustee

changed; there was an assignment of the mortgage and deed of trust, which was not recorded in the

county records; and the loan was included in a pooling and servicing agreement known as the

Soundview Home Loan Trust.  He alleges that as a result, neither the trustee for the certificate

holders of the Soundview Home Loan Trust, Wells Fargo Bank, N.A., nor the new loan servicer,

American Home Mortgage Servicing, Inc. ("AHMSI"), had the authority to foreclose on the

mortgage and that they are therefore liable for wrongful foreclosure.  Bittinger also alleges that

Option One Mortgage Corporation (now Sand Canyon Corporation), which originated the loan,

allegedly charged excessive fees, provided "deceptive forms," participated in coercing Bittinger into

accepting the loan agreements, and transferred the loan without informing him.  Bittinger alleges

that this "hidden" "securitization scheme" violated the Truth in Lending Act (TILA), 16 U.S.C. §

1601 *et seq.*, by failing to disclose profits received.  He also alleges that Option One and AHMSI

knew that the payments he made on the mortgage loan were inaccurately credited and that interest

and debit fees were inaccurately calculated.  (Docket Entry No. 1, ¶ 47).  He alleges that as a result,

the defendants are liable under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692

*et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*  In his

response to the defendants' motions to dismiss, Bittinger asserts that the TILA and RESPA

violations are only alleged against Option One.  (Docket Entry No. 11, p. 6, ¶ 14).  He seeks actual

and punitive damages, fees, rescission of the foreclosure, and other relief against all the defendants.

Wells Fargo and AHMSI (together, the AHMSI Defendants) have moved to dismiss or

alternatively for a more definite statement.  (Docket Entry No. 9).  Option One has filed a separate

motion seeking the same relief.  Bittinger has responded, (Docket Entry No. 11), and the AHMSI

Defendants and Option One have replied, (Docket Entries No. 12 and 13).  Based on the pleadings

and the applicable law, this court grants the motions to dismiss with prejudice as to certain claims

and with leave to amend as to other claims.  The motion for more definite statement filed by the

AHMSI is moot.  The reasons for these rulings are set out below.

**I.      The Legal Standard**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be

granted."  FED. R. CIV. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007),

the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which

requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.

R. CIV. P. 8(a)(2). *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson*,

355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63. To withstand a Rule 12(b)(6)

motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368,

372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct.

1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The

Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). With respect to the

"plausibility" standard described in *Twombly*, *Iqbal* explained that "[a] claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The

*Iqbal* Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*,

550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

(quoting *Twombly*, 550 U.S. at 557). The Court concluded that "Rule 8 does not empower

respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and

expect his complaint to survive a motion to dismiss." *Id.*

In accordance with the pleading principles described in *Twombly* and *Iqbal*, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do' . . . ." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965); *see also Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "'Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.'" *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (unpublished) (per curiam) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965 n.3). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. at 555); *see also In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555), *cert. denied*, 129 S. Ct. 1669 (2009). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 558).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action

with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)).  However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (unpublished) (per curiam) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

## II.      The Wrongful Foreclosure Claim

Bittinger alleges that the AHMSI Defendants are liable for wrongful foreclosure because they did not record the assignment of the deed of trust or mortgage in the county property records when these defendants became the loan's trustee and servicer approximately one year after Bittinger executed the mortgage loan and the deed of trust.  The claim fails as a matter of law.

Under Texas common law, a debtor may recover for wrongful foreclosure when the party has suffered a loss or injury due to inconsistencies or irregularities in the foreclosure process. *See Wieler v. United Sav. Ass'n of Tex.,* 887 S.W.2d 155, 158 (Tex.App.—Texarkana 1994), *writ denied*

*per curiam,* 907 S.W.2d 454 (Tex.1995); *see also Cuauhtli v. Chase Home Finance LLC,* No. 406-CV-472-A, 2007 WL 548759, at *4 (N.D. Tex. Feb.22, 2007).  A debtor may recover damages on such a theory only if the lender (1) fails to comply with statutory or contractual terms, or (2) complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings.  *Houston Omni USA Co. v. Southtrust Bank Corp.,* No. 01-07-00433-CV, 2009 WL 1161860, at *6 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *First State Bank v. Keilman,* 851 S.W.2d 914, 921–22 (Tex. App.—Austin 1993, no writ).  Section 51.002 of the Texas Property Code governs a foreclosure sale of real property pursuant to a deed of trust and provides specific requirements as to the time and place a foreclosure sale must be held, as well as to the notices that must be given before the sale.  *See, e.g.,* TEX. PROP. CODE § 51.002(b) (notice of sale); *id.*, § 51.002(e).  Texas law allows a mortgage note to be enforced by the note owner or holder.  TEX. BUS. & COM. CODE § 3.301.

Bittinger has no legal ground for a wrongful foreclosure claim based on the failure to record the deed of trust in the county real property records.  *See JWD, Inc. v. Fed. Ins. Co.*, 806 S.W.2d 327, 329–30 (Tex. App.—1991, no writ).  Nor does he have a legal ground based on the appointment of Wells Fargo as trustee and the lack of a record of the assignment of the deed of trust in the county real property records.  Under Texas law, there is no requirement that the deed of trust assignment be recorded.  And under Texas law, the ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of deed of trust is either prepared or recorded.  *Id.* (collecting cases).  The failure to record the deed of trust in the real property records of Harris County when the loan was originally made, or to record the assignment of the deed of trust when

it was executed, and the foreclosure before the assignment was recorded, do not as a matter of law give rise to a wrongful foreclosure claim.

The motion to dismiss the wrongful foreclosure claim against the AHMSI Defendants is granted. The claims that the foreclosure was wrongful because there was no timely recording of the assignment of the deed of trust is dismissed with prejudice because it lacks merit under Texas law, Bittinger has already amended once, and any further amendment would be futile. Bittinger is granted leave to amend to clarify the allegations as to whether and how inaccurate calculations of the amounts owing and of the default made the foreclosure wrongful.

## III.     The Breach of Contract Claims

To the extent that Bittinger sues both the AHMSI Defendants and Option One for breach of the pooling and servicing agreement, his claim fails as a matter of law. Bittinger is not a party to this agreement and did not become a party, agent or assignee of a party, or a third-party beneficiary of the agreement, because his loan was "bundled" and sold or transferred under this agreement. As a result, he has no  ability under Texas law to sue for breach of this contract. *See, e.g., Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (citing *House v. Houston Waterworks Co.*, 31 S.W. 179, 180 (Tex. 1895)). This claim is dismissed, with prejudice and without leave to amend because Bittinger has already amended once and further amendment would be futile.

## III.     The Breach of Fiduciary Duty Claims

Texas law does not recognize a fiduciary relationship between a borrower and a lender. To the extent Bittinger alleges a breach of fiduciary duty against the AHMSI Defendants and Option One, his claim fails as a matter of law. *See Williams v. Countrywide Home Loans, Inc*., 504 F. Supp.

2d 176, 192-193 (S.D. Tex. 2007), *aff'd*, 2008 WL 687295 (5th Cir. 2008).  This claim is dismissed, with prejudice and without leave to amend because Bittinger has already amended once and further amendment would be futile.

**IV.     The Statutory Claims**

Bittinger alleges that both the AHMSI Defendants and Option One violated the Fair Debt Collection Practices Act by being part of the "illegal securitzation scheme."  As to the AHMSI Defendants, Bittinger alleges wrongful foreclosure and that they imposed excessive and incorrect late fees.  Bittinger alleges that Option One also violated the Truth in Lending Act and the RESPA by failing to provide preliminary disclosures relating to the "layers of different parties receiving monies/commission in connection with the mortgage." (Docket Entry No. 1, ¶ 44; Docket Entry No. 11, p. 5, ¶ 10).  Each of these allegations is analyzed below.

**A.     The Fair Debt Collection Practices Act**

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  The FDCPA restricts debt collectors from making false or misleading representations or using unfair collection methods.  *Id.* § 1692(e), (f).  Debt collectors must also provide certain written information concerning the debt collection.  *Id.* § 1692(g).

The FDCPA claims against the AHMSI Defendants based on the foreclosure fail as a matter of law.  The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of

any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692(a)(6). "The activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA." *Williams*, 504 F. Supp. 2d at 190; *see also Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal.2008). Applied to the current facts, neither Wells Fargo as trustee for the certificate holders of the Soundview Home Loan Trust (which, as Bittinger acknowledges, does not make Wells Fargo or AHMSI either the trustee or substitute trustee of the loan at issue), or AHMSI as the loan servicer can be liable under the FDCPA. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *Breedlove v. Wells Fargo Bank, N.A.*, No. CV-09-8135-PCT-JAT, 2010 WL 3000012, at *3 (D. Ariz. July 28, 2010). The claims under the FDCPA are dismissed because as a matter of law the statute does not provide relief against the types of entities and activities alleged. This claim is dismissed, with prejudice and without leave to amend because Bittinger has already amended once and further amendment would be futile.

### B.    The Real Estate Settlement Procedures Act

Bittinger alleges that the AHMSI Defendants violated the RESPA by failing to disclose the layers of parties receiving money in connection with the mortgage, as well as the "Yield Spread Premium, defined and found in the contracts and documents within the Soundview Home Loan Trust 2007-OPTIC agreements filed with the SEC." (Docket Entry No. 1, ¶¶ 44, 45). Section 2605 of RESPA requires a loan servicer to provide a written response to a borrower's qualified written request. 12 U.S.C. § 2605(e). This section of RESPA is intended to provide borrowers with greater access to account information. *See id.* § 2601(a). The request must be: 1) a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer; 2) that

includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

3) that includes a statement of the reasons for the borrower's belief, to the extent applicable, that the

account is in error or provides sufficient detail to the servicer regarding other information sought

by the borrower. *Id.* § 2605(e)(1)(B).  The qualified written request must be related to the servicing

of the loan.  *See id.* § 2605(e)(1)(A).  "Servicing" includes "any scheduled periodic payments from

a borrower" or the "making of . . . payments of principal and interest . . . ."  *Id.* § 2605(i)(3).  Finally,

a plaintiff must allege actual damages resulting from a violation of § 2605.  *Id.* § 2605(f)(1)(A)

("Whoever fails to comply with any provision of this section shall be liable to the borrower for each

such failure in the following amounts:  in the case of any action by an individual, an amount equal

to the sum of . . . any actual damages to the borrower as a result of the failure."); *Collier v. Wells

Fargo Home Mortg.*, No. 7:04-CV-086-K, 2006 WL 1464170, at *3 (N.D. Tex. May 26, 2006);

*Hepler v. Washington Mut. Bank*, *F.A.*, No. CV 07-4804 CAS (Ex.), 2009 WL 1045470, at *4–5

(C.D. Cal. Apr. 17, 2009).

Bittinger's complaint does not allege any basis for a claim under this section of the RESPA.

This claim is dismissed.  Because it is not clear that leave to amend would be futile, the dismissal

is without prejudice and with leave to amend.

Bittinger also refers to a claim for "illegal kickbacks" under § 2607(b) of RESPA.  This

section provides that "[n]o person shall give and no person shall accept any portion, split, or

percentage of any charge made or received for the rendering of a real estate settlement service in

connection with a transaction involving a federally related mortgage loan other than for services

actually performed."  By its terms, § 2607 applies only to charges for real estate "settlement

service[s]." RESPA defines "settlement services" as "any service provided in connection with a real

estate settlement," including, but not limited to: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement."  12 U.S.C. § 2602(3).  According to Department of Housing and Urban Development regulations, a real estate "settlement" means "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan.  This process may also be called 'closing' or 'escrow' in different jurisdictions."  24 C.F.R. § 3500.2(b).  Courts have interpreted this definition of a real estate settlement as  temporally limited to the period surrounding a mortgage transaction's closing.  Under this definition, the claims arising years after Bittinger's mortgage closed do not arise from "settlement" services and cannot state a claim under § 2607(b) of RESPA.  *See Fitch v. Wells Fargo Bank, N.A.*, — F. Supp. 2d. —, 2010 WL 1743202, at *2–3 (E.D. La. 2010); *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 359–60 (5th Cir. 2003) (observing that "Congress directed RESPA toward the closing.  The primary ill that § 2607 is designed to remedy is the potential for 'unnecessarily high settlement charges' caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services."); *Bloom v. Martin*, 77 F.3d 318, 320–21 (9th Cir. 1996) (holding that § 2607 did not apply to demand and reconveyance fees charged in connection with a borrower's prepayment of the balance of a loan); *McAnaney v. Astoria Financial Corporation,* 375 F. Supp. 2d 578, 581–82 (E.D. N.Y. 2005) (equating settlement with closing and adopting a "bright-line rule, limiting the scope of RESPA to practices at or before settlement.").  The

RESPA claim is dismissed because no relief is available under that statute, as a matter of law.  This claim is dismissed, with prejudice and without leave to amend because Bittinger has already amended once and further amendment would be futile.

        **C.**       **The Truth in Lending Act**

The purpose of the TILA is to protect the consumer from inaccurate and unfair credit practices and "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  *James v. City Home Service, Inc*., 712 F.2d 193, 194 (5th Cir. 1983) (quoting 15 U.S.C. § 1601(a)).  A one-year statute of limitations governs claims under the TILA.  *See* 15 U.S.C. § 1640(e).  According to the statute, limitations runs from the date each violation occurred.  *Id.*  A violation occurs when credit is extended through the consummation of the transaction between creditor and its customer without the required disclosures being made.  *Stevens v. Rock Springs National Bank*, 497 F.2d 307, 309-10 (10th Cir.1974).

According to Bittinger's complaint, the loan at issue closed on March 22, 2007.  (Docket Entry No. 1, ¶¶ 26–28).  Bittinger did not file suit until 2010.  Limitations bars any TILA claims arising from the loan.  *See  Williams*, 504 F. Supp. 2d at 186; *Patterson v. Sierra Pacific Mortg. Co.*, Civ. A. No. 3:07-CV-1601-G, 2008 WL 2596904, at *4 (N.D. Tex. July 1, 2008).  This claim is dismissed, with prejudice and without leave to amend because Bittinger has already amended once and further amendment would be futile.

        **D.**       **The Fair Credit Reporting Act**

Bittinger also asserts a claim under the FCRA, 15 U.S.C. § 1681.  He does not allege the basis for this claim.  Under the FCRA, a "consumer reporting agency" is "any person which, for

monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the

practice of assembling or evaluating consumer credit information or other information on consumers

for the purpose of furnishing consumer reports to third parties, and which uses any means or facility

of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. §

1681a(f).

There is no allegation of any facts that the defendants were a "consumer reporting agency," as that

term is defined by the FCRA.

        Bittinger appears to be pursuing claims under 15 U.S.C. § 1681s-2.  (Docket Entry No. 1,

¶ 56).  Section 1681s-2(a) states that "[a] person shall not furnish any information relating to a

consumer to any consumer reporting agency if the person knows or has reasonable cause to believe

that the information is inaccurate."   Under § 1681 s-2(a)(1)(B), "[a] person shall not furnish

information relating to a consumer to any consumer reporting agency if . . . (i) the person has been

notified by the consumer, at the address specified by the person for such notices, that specific

information is inaccurate; and (ii) the information is, in fact, inaccurate."  The Fifth Circuit has yet

to rule on whether a private cause of action exists under § 1681s-2.  *See Young v. Equifax Credit

Info. Servs.*, 294 F.3d 631, 639 (5th Cir. 2002).  District courts in the Fifth Circuit generally have

held that a private right of action does not exist.  *See, e.g.*, *Wagner v. BellSouth Telecomms.*, Civ.

A. No. 07-604-C, 2008 WL 348784, at *3 (M.D. La. Feb.7, 2008); *but see Smith v. Nat'l City

Mortg.*, No. A-09-CV-881 LY, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010).  However,

even if Bittinger has a private right of action under this statute, he has not sufficiently pleaded that

a consumer reporting agency reported an inaccuracy and that the furnisher of the information failed

to correct it.  *See Davis v. Farm Bureau Bank, FSB*, No. SA-07-CA-967-XR, 2008 WL 1924247,

\* 3 (W.D. Tex. April 30, 2008).  Bittinger has failed to state a valid claim under FCRA on which relief may be granted.  This claim is dismissed, with prejudice and without leave to amend because Bittinger has already amended once and further amendment would be futile.

### E.      Fraud

Bittinger asserts a claim for fraud.  The elements of a fraud claim are: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.  *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).  A fraud claim is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires the plaintiff to plead his claim with particularity.  *Tuchman v. DSC Commc'n Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see also Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993) ("The allegations should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants.").  Bittinger's claim fails to meet this standard. He does not identify any fraudulent statements made by the defendants.

A cause of action for fraud may be based on a defendant's failure to disclose information if there is a duty on the defendant to do so.  *See Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001);

*Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex.1997). A duty to disclose may arise when: (1) the parties have a confidential or fiduciary relationship; (2) one party voluntarily makes a representation, which gives rise to the duty to disclose the whole truth; (3) one party makes a representation, which gives rise to the duty to disclose new information the party is aware of that makes the earlier representation misleading or untrue; or (4) one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc*., 217 S.W.3d 653, 670–71 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). In this case, Bittinger has alleged no facts establishing either a duty to disclose on the part of the defendants that was breached or any affirmative misrepresentations. The claim is dismissed, with leave to amend.

## IV.     Conclusion and Order

The motions to dismiss are granted. To the extent leave to amend is granted, an amended complaint consistent with this memorandum and order must be filed by **October 29, 2010**.

SIGNED on October 8, 2010, at Houston, Texas.

Lee H. Rosenthal

United States District Judge