**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT BITTINGER, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-10-1745 |
| | § | |
| WELLS FARGO BANK NA, *In Its* | § | |
| *Name and as Trustee for the Certificate* | § | |
| *Holders of Soundview Home Loan Trust* | § | |
| *2007-OPTI, Asset-Backed Certificates* | § | |
| *Series 2007-OPTI, et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

**I.   Background**

This case arises out of a nonjudicial foreclosure on a home.  Robert Bittinger, the mortgagee, sued the mortgage loan's trustee, Wells Fargo Bank NA; the loan's servicer, American Home Mortgage Servicing, Inc. ("AHMSI"); the loan's originator, Option One Home Mortgage Corp.; and a law firm involved in the foreclosure, Mackie Wold & Zientz.  The original complaint asserted causes of action for wrongful foreclosure; breach of contract; and breach of fiduciary duty; as well as violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*  (Docket Entry No. 1).  This court dismissed Bittinger's original complaint but granted leave to amend three claims: the wrongful-foreclosure claim against Wells Fargo and AHMSI, with the requirement that Bittinger replead to "clarify the allegations as to whether and how inaccurate calculations of the amounts owing and of the default made the foreclosure wrongful"; the RESPA claim alleging that AHMSI did not respond to Bittinger's "qualified written request"; and

the fraud claim. Bittinger's claims were otherwise dismissed with prejudice, (Docket Entry No. 14), and Bittinger's motion for reconsideration was denied, (Docket Entry No. 22).

Bittinger amended his complaint twice. (Docket Entry Nos. 16, 26). The first amended complaint asserted claims for wrongful foreclosure, fraud, and a RESPA violation. The second amended complaint asserted an additional claim for breach of contract. (Docket Entry No. 39; *see also* Docket Entry No. 43, at 2). This court dismissed Bittinger's fraud, RESPA, and breach of contract claims, all with prejudice, leaving only the wrongful foreclosure claim against Wells Fargo and AHMSI based on the alleged failures to provide notice and to calculate payments correctly. (Docket Entry No. 43, at 13).

Bittinger has now filed a "Motion To Re-instate the Wrongful Foreclosure cause of action based on FRAUD[.]" (Docket Entry No. 47, ¶ 1). Wells Fargo and AHMSI oppose the motion. (Docket Entry No. 49). Wells Fargo and AHMSI have filed a motion for summary judgment on the remaining claim of wrongful disclosure. (Docket Entry No. 48). Bittinger has responded, (Docket Entry No. 50), and Wells Fargo and AHMSI have replied, (Docket Entry No. 52). Shortly before a hearing, this court issued an order seeking further information from the parties relevant to these motions. The order stated as follows:

> A review of the record indicates that additional information on the status of AHMSI with respect to the note at the time of foreclosure would be helpful. The record evidence suggests, but does not appear to establish, that: (1) the note had previously been transferred from Option One Mortgage Company to Wells Fargo, (2) Wells Fargo was the note's holder at the time of the nonjudicial foreclosure, and (3) AHMSI acted as the note's servicer at that time. At docket call, the court will ask the parties to address the issue of the note's transfer. The parties should submit any additional evidence that shows the roles of Wells Fargo and AHMSI at the time of foreclosure—such as note servicer or note holder—no later than three days before the hearing and docket call.

(Docket Entry No. 53, at 2). Wells Fargo and AHMSI submitted supplemental evidence. (Docket Entry No. 55). Bittinger responded by objecting to that evidence. (Docket Entry No. 56). The parties presented argument on the motion at the hearing.

Based on the record; the motions, responses, and replies; the supplemental evidence; the arguments of counsel; and the relevant law, this court denies Bittinger's motion to reinstate the fraud claim and grants summary judgment for Wells Fargo and AHMSI on the remaining wrongful-disclosure claim. The reasons for these rulings are explained below.

## II.     Bittinger's Motion to Reinstate Fraud Claim

Bittinger moves to reinstate his dismissed fraud claim based "on the strength of newly discovered material showing party's admission for Fraud in perpetrating Wrongful Disclosure in Texas and against Bittinger." (Docket Entry No. 47, ¶ 1). Such a motion is appropriately considered under Federal Rule of Civil Procedure 59(e), which allows for "[a] motion to alter or amend a judgment [that is] filed no later than 28 days after the entry of the judgment." This rule applies to a motion to reconsider a court's previous ruling based on, for example, newly discovered evidence. *See, e.g.*, *Rogers v. KBR Tech. Servs. Inc.*, No. 08-20036, 2008 WL 2337184, at *5 (5th Cir. June 9, 2008) (per curiam) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003)). Relief under this rule is difficult to obtain. As the Fifth Circuit explains:

> A Rule 59(e) motion—which asks the court to set aside its previous judgment—"serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."

*Ewans v. Wells Fargo Bank, N.A.*, 389 F. App'x 383, 389–90 (5th Cir. 2010) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)); *accord* 11 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124–26 (2d ed. 1995).

Bittinger seeks reinstatement of his fraud claim because of newly discovered evidence. But he has presented no new evidence supporting the rule's extraordinary relief. A basic requirement of a fraud claim under Texas law is a misrepresentation. (*See* Docket Entry No. 43, at 10 (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001))). Bittinger failed to identify any misrepresentation in his complaint, (Docket Entry No. 43, at 11), and he again fails to identify a misrepresentation in his motion. Bittinger's "newly identified material," which he asserts requires this court to set aside its dismissal of his fraud claim, consists of AHMSI's pleading in a Texas state-court action against other defendants. (*See* Docket Entry No. 47, ¶ 4). In that pleading, AHMSI described the steps it took, with the help of those defendants, before initiating a foreclosure action. (*See id.*, Ex. 1, ¶ 19). According to Bittinger, that description is an admission of fraud. (*See id.*, ¶ 5). But this description does not identify any representation, let alone misrepresentation, made by AHSMI to Bittinger. There is no basis to reinstate the dismissed fraud claim. Bittinger's motion to do so is denied.

### III.   Wells Fargo and AHSMI's Motion for Summary Judgment

####    A.   The Summary Judgment Evidence

The evidence introduced at the summary judgment stage consists of the affidavit of David Merrill, (Docket Entry No. 48, Ex. 1), and accompanying exhibits.[1] Wells Fargo and AHMSI

---

[1] Those accompanying exhibits are, in chronological order, the original March 2007 promissory note between Bittinger and Option One, (*id.*, Ex. A); the March 2007 deed of trust, (*id.*, Ex. B); AHMSI's October 2008 letter to Bittinger with a proposed loan-modification agreement, (*id.*, Ex. C); Bittinger's initialed and signed loan-modification agreement, and three money orders made payable to AHMSI, (*id.*, Ex. D); July 11, 2009 record of Bittinger's insurance-policy

submitted supplemental evidence, (Docket Entry No. 55), including the affidavit of Roger Kistler, (*id.*, Ex. 2).[2] Bittinger has submitted no evidence but has objected to the evidence submitted by the defendants. (Docket Entry No. 56).

First, Bittinger objects to the affidavits of Merrill and Kistler on the basis that they are inadmissible hearsay. (Docket Entry No. 50, ¶ 21 (Merrill); Docket Entry No. 56, ¶ 6 (Kistler)). The Fifth Circuit "ha[s] held that an affidavit can adequately support a motion for summary judgment when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit concerns." *Carson v. Perry*, 91 F.3d 138 (table), 1996 WL 400122, at *1 (5th Cir. 1996) (per curiam) (citing *FDIC v. Selaiden Builders, Inc.*, 937 F.2d 1249, 1254–55 n.12 (5th Cir. 1992); and *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992) (per curiam)); *see also Cuevas v. BAC Home Loans Servicing LP*, 648 F.3d 242, 250 (5th Cir. 2011) (citing

---

cancellation, (*id.*, Ex. J); AHMSI's July 17, 2009 notice of default to Bittinger, (*id.*, Ex. M); AHMSI's September 18, 2009 notice of default sent via certified mail to Bittinger, (*id.*, Ex. E); AHMSI's September 28, 2009 letter regarding insurance policy, (*id.*, Ex. K); Bittinger's October 2009 letter regarding insurance policy, (*id.*, Ex. L); AHMSI's December 3, 2009 notice of loan acceleration sent via certified mail to Bittinger, (*id.*, Ex. F); AHMSI's December 14, 2009 notice of foreclosure sale of the deed of trust, (*id.*, Ex. G); the January 2010 foreclosure-sale deed and accompanying affidavit, (*id.*, Ex. H); and Bittinger's customer-account activity statement with AHMSI, (*id.*, Ex. I).

Bittinger, in turn, relies on the exhibits submitted by Wells Fargo and AHMSI, as well as his second amended complaint, (Docket Entry No. 26), and this court's memorandum and order regarding the motion to dismiss that complaint, (Docket Entry No. 43).

[2] The supplemental exhibits consist of the affidavit of Roger Kistler, (*id.*, Ex. 2); the original March 2007 promissory note between Bittinger and Option One, (*id.*, Ex. 2A); the March 2007 deed of trust, (*id.*, Ex. 2B); the April 2007 assignment and conveyance of the promissory note and deed of trust to Greenwich Capital Financial Products, Inc., (*id.*, Ex. 2C); the May 2007 assignment and recognition agreement between Greenwich Capital, Financial Asset Securities Corp., and Option One, (*id.*, Ex. 2D); the May 2007 "Pooling and Servicing Agreement" between Financial Asset, Option One, and Wells Fargo, (*id.*, Ex. 2E); a redacted portion of the loan schedule, (*id.*, Ex. 2F); a March 2008 letter in which Wells Fargo approves AH Mortgage Acquisition Corp. as successor servicer, (*id.*, Ex. 2G); a letter from Option One and AHMSI to Bittinger informing him of AHMSI's succession as servicer, (*id.*, Ex. 2H); Wells Fargo's June 2009 grant of a limited power of attorney to AHMSI, (*id.*, Ex. 2I); AHMSI's July 17, 2009 notice of default to Bittinger, (*id.*, Ex. 2J); AHMSI's September 18, 2009 notice of default sent via certified mail to Bittinger, (*id.*, Ex. 2K); and AHMSI's December 1, 2009 appointment of a substitute trustee, (*id.*, Ex. 2L).

approvingly the affidavit of a corporate officer submitted in support of summary judgment; the affidavit stated that the officer had knowledge of the corporate structure and had reviewed relevant business records). Merrill and Kistler stated at the outset of their affidavits that they have personal knowledge of AHMSI's "transfer[], possession, and servic[e] of AHMSI's loans," including Bittinger's mortgage loan, through their positions at AHMSI. (Docket Entry No. 48, Ex. 1, ¶ 2 (Merrill); Docket Entry No. 55, Ex. 2, ¶ 2 (Kistler)). Merrill and Kistler additionally stated that their affidavits were based on their review of AHMSI's records related to Bittinger's mortgage loan. (Docket Entry No. 48, Ex. 1, ¶ 5 (Merrill); Docket Entry No. 55, Ex. 2, ¶ 5 (Kistler)). The affidavits are competent summary judgment evidence.[3]

Bittinger objects to the Pooling and Servicing Agreement ("PSA"). According to Bittinger, "[t]his Court ruled the PSA inadmissible because Bittinger 'was not a party to the agreement.' (See Docket Entry 14)." (Docket Entry No. 56, ¶ 1). The opinion cited by Bittinger states:

> To the extent that Bittinger sues both the AHMSI Defendants and Option One for breach of the pooling and servicing agreement, his claim fails as a matter of law. Bittinger is not a party to this agreement and did not become a party, agent or assignee of a party, or a third-party beneficiary of the agreement, because his loan was "bundled" and sold or transferred under this agreement. As a result, he has no ability under Texas law to sue for breach of this contract.

(Docket Entry No. 14, at 7). The court then dismissed Bittinger's claim for breach of the PSA. The court did not hold that the PSA was inadmissible evidence.

---

[3] In a last-ditch effort to get this court to ignore Merrill's affidavit, Bittinger accuses AHMSI of "consistently playing a fast one with the courts with their persistent false documenting." To support that intemperate statement, Bittinger copies and pastes from Merrill's alleged LinkedIn profile, which identifies him not as "Assistant Secretary" but as "Sr. Foreclosure Mediation Specialist II." (Docket Entry No. 50, ¶ 21). Bittinger did not submit the actual LinkedIn profile as evidence, and even had he done so, he does not offer any reason for the court to trust its accuracy. Moreover, even if Merrill's title were different (but the affidavit otherwise remained the same), that would not affect this court's analysis of his competency to testify to the matters asserted in his affidavit.

Bittinger objects to the May 2007 assignment and recognition agreement, (Docket Entry No. 2D), on two grounds: first, that one of the signatories to the agreement, Pat Leo, signed on behalf of both Greenwich Capital and Financial Asset; and second, that the agreement is not dated or notarized. (Docket Entry No. 56, ¶ 8). Neither ground provides a reason to find the agreement inadmissible as summary judgment evidence.

Bittinger objects to the letter in which Wells Fargo consented to AHMSI as the servicer for the mortgage loans included in the PSA. (Docket Entry No. 55, Ex. 2G). Bittinger objects on the basis of relevance, arguing that the loan bundle that includes his promissory note and deed of trust—Soundview Home Loan Trust 2007-OPT1—is not listed in that letter. (Docket Entry No. 59, ¶ 9). The schedule attached to the letter lists "Soundview Home Equity Loan Asset Backed 2007-OPT-1" under the column entitled "Trust." In the next columns, the schedule describes the parties to and then identifies the date of the PSA at issue here. (Docket Entry No. 55, Ex. 2G, Schedule A, at 2). This objection is without merit.

Bittinger also objects to AHMSI's December 1, 2009 appointment of a substitute trustee to conduct the foreclosure sale. (Docket Entry No. 55, Ex. 2L). He raises three objections to that document: that Wells Fargo is not the "mortgagee"; that Michael Zientz, one of the appointed substitute trustees, acted as a debt collector for AHMSI; and that the notarization is invalid. (Docket Entry No. 57, ¶ 10). Each objection is without merit. In particular, even assuming that Zientz is a debt collector, Texas law does not prohibit debt collectors from acting as a substitute trustee. Rather, the definition stated in TEX. PROP. CODE § 51.0075(b)—namely, that "[a] trustee or substitute trustee is not a debt collector"—is intended only to prohibit plaintiffs from bringing suit against substitute trustees under the Texas Debt Collection Practices Act. *Cf. Eisenberg v. Deutsche Bank Trust Co. Americas*, No. SA-11-CV-384-XR, 2011 WL 2636135, at *2 (W.D. Tex. July 5,

2011) ("Further, a substitute trustee is not a debt collector or a creditor, and thus Plaintiff cannot assert claims against the Substitute Trustees under the Texas Debt Collection Practices Act.").[4]

The objections to the summary judgment evidence are overruled.

### B. Background

The summary judgment evidence shows that, on March 22, 2007, Robert Bittinger and Option One Mortgage Company entered into a financing transaction. In return for a loan, Bittinger executed a promissory note and secured that note by executing a deed of trust for his Houston home. Option One originally held the promissory note and the deed of trust (collectively, "the mortgage loan"). (*E.g.*, Docket Entry No. 55, Ex. 2, ¶ 6; Exs. 2A, 2B). The promissory note stated that "the Lender [originally, Option One] may transfer this Note." (*E.g.*, *id.*, Ex. 2A, ¶ 1). The deed of trust stated that "[t]he Note or a partial interest in the Note (together with this Security Instrument [the deed of trust]) *may be sold* one or more times *without prior notice* to Borrower [Bittinger]." It additionally stated that, if the mortgage-loan holder changed its servicer, Bittinger would be notified. (*E.g.*, *id.*, Ex. 2B, ¶ 19 (emphasis added)). An allonge to the note contains the note's endorsement. (*E.g.*, *id.*, Ex. 2A).

On April 30, 2007, Option One conveyed a bundle of mortgage loans to Greenwich Capital Financial Products. Bittinger's mortgage loan was included in that bundle. (*Id.*, Ex. 2, ¶ 7; Ex. 2C). On May 15, Greenwich Capital conveyed this bundle to Financial Asset Securities, which agreed to transfer it to a trust entitled "Soundview Home Loan Trust 2007-OPT1." The Soundview trust would be created by the PSA, "dated as of April 1, 2007," among Financial Asset, Wells Fargo as

---

[4] Finally, to the extent that Bittinger raises other objections to Wells Fargo and AHMSI's summary judgment evidence—the court cannot discern from Bittinger's confusing briefs exactly what else he is objecting to, save for amorphous general objections—the court overrules those objections after reviewing the admissibility of each exhibit.

the trustee, and Option One as the servicer. (*Id.*, Ex. 2, ¶ 7; Ex. 2D, ¶ 2). The May 15 conveyance stated that another entity could succeed Option One as the servicer. (*Id.*, Ex. 2D, ¶ 2).

Financial Asset, Wells Fargo, and Option One entered into the PSA creating the Soundview trust, which included Bittinger's mortgage loan,[5] in May 2007. (*Id.*, Ex. 2, ¶ 8, Ex. 2E). The PSA identifies:

- Wells Fargo as the trustee for the mortgage loans contained within the PSA, and "as custodian of the Mortgage Files" contained within the PSA, (*id.*, Ex. 2, ¶ 8; Ex. 2E, at 27, 63);

- Option One, "or any successor servicer appointed as herein provided," as the servicer for the mortgage loans contained within the PSA, (*id.*, Ex. 2, ¶ 8; Ex. 2E, at 58); and

- Financial Asset as the depositor, (*id.*, Ex. 2, ¶ 8; Ex. 2E, at 28).

Under the PSA, Financial Asset conveyed the Soundview trust to Wells Fargo as trustee and delivered the mortgage files to Wells Fargo as custodian. (*Id.*, Ex. 2, ¶¶ 8, 12; Ex. 2E, at 74). Option One, or its successor servicer, would "service and administer the Mortgage Loans on behalf of the [Soundview] Trust[.]" (*Id.*, Ex. 2, ¶ 8; Ex. 2E, at 90). The PSA requires the servicer to "make reasonable efforts . . . to collect all payments called for under the terms and provisions of the Mortgage Loans[.]" (*Id.*, Ex. 2E, at 95). The PSA expressly grants the servicer (Option One or its successor) the right "to institute foreclosure proceedings" on behalf of the trustee (Wells Fargo) "when the Servicer believes it appropriate in its best judgment in accordance with the Servicing Standard[.]" (*Id.*, Ex. 2, ¶ 8; Ex. 2E, at 91).

On March 17, AH Mortgage Acquisition Company, Inc.—which would soon change its name to AHMSI—purchased a substantial portion of Option One's servicing business. The

---

[5] Docket Entry No. 55, Ex. 2, ¶ 9; Ex. 2F.

9

purchased business included the servicing of the Soundview trust. Option One's attorney wrote to Wells Fargo, asking Wells Fargo to consent to AHMSI succeeding Option One as servicer under the PSA. Wells Fargo consented on April 29. (*Id.*, Ex. 2, ¶ 10; Ex. 2G). On June 16, Option One and AHMSI jointly mailed Bittinger a letter informing him that AHMSI would service his mortgage loan beginning July 1. (*Id.*, Ex. 2, ¶ 11; Ex. 2H).

On October 20, AHMSI mailed Bittinger a letter informing him that he was behind on his payments. AHMSI attached an offer for a loan-modification agreement. (Docket Entry No. 48, Ex. 1, ¶ 7; Ex. C). On December 1, 2008, Bittinger accepted the offer by initialing each page and signing the loan-modification agreement, as well as by sending three money orders totaling $1,320 made payable to "American Home Mortgage Serv. Inc." (*Id.*, Ex. 1, ¶ 7; Ex. D).

On June 8, 2009, Wells Fargo executed a "Limited Power of Attorney." In this document, it irrevocably appointed AHMSI "as its true lawful attorney-in-fact with power and authority in the place and stead of [Wells Fargo] . . . to take any and all appropriate action . . . to accomplish the purposes of servicing mortgage loans[.]" (Docket Entry No. 55, Ex. 2I; *see also* Ex. 2, ¶ 12).

Bittinger once again fell behind on his mortgage-loan payments. On September 18, AHMSI formally notified Bittinger by certified mail that he was in default and that he faced foreclosure unless he cured the default by October 23. (Docket Entry No. 48, Ex. 1, ¶ 8; Ex. E). Bittinger did not respond. On December 3, AHMSI formally notified Bittinger, again by certified mail, that his mortgage loan had been accelerated and that a foreclosure sale would occur on January 5, 2010. (*Id.*, Ex. 1, ¶ 8; Ex. F). On December 14, 2009, the substitute trustees filed the notice of foreclosure sale with the Harris County Clerk's Office. (*Id.*, Ex. 1, ¶ 8; Ex. G). The foreclosure sale occurred

as planned on January 5, 2010, with Wells Fargo buying Bittinger's property. (*Id.*, Ex. 1, ¶ 8; Ex. H).[6]

### C. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted). "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

---

[6] Wells Fargo and AHMSI's motion for summary judgment describes at length, with extensive citations to supporting evidence, its calculations of the amounts Bittinger owed under the mortgage loan and how it applied any payments from Bittinger. (Docket Entry No. 48, ¶¶ 17–29). Bittinger nowhere has disputed these calculations and applications.

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

## III.    Wrongful Foreclosure

The claim for wrongful foreclosure is the only remaining claim in this case. Bittinger bases this claim on three separate theories: lack of authority to foreclose, inadequate notice of foreclosure, and miscalculated amounts owed under the mortgage loan. Each theory is considered below.

### A.    Lack of Authority

The general theme throughout Bittinger's briefs opposing summary judgment and objecting to Wells Fargo and AHMSI's supplemental evidence is that Wells Fargo and AHMSI lacked authority to foreclose because of alleged defects in the loan's chain of assignment.[7] (*See generally*

---

[7] Bittinger also contends that the loan-modification agreement, which he allegedly breached (thus leading to the foreclosure), is unenforceable because AHMSI had no authority to modify the underlying mortgage. (Docket Entry No. 50, at 1–2). Bittinger previously raised this argument, (Docket Entry No. 39, ¶ 15), and this court rejected it, (Docket Entry No. 43, at 12). Even if the court were to reconsider the argument, it still would be unavailing. Bittinger points to the deed of trust's provision that states, "This Security Instrument may be modified or amended only by an agreement signed by Borrower and Lender." (Docket Entry No. 48, Ex. B, ¶ 30). According to Bittinger, AHMSI was not the "lender"—Wells Fargo, as successor to Option One, was—and so AHMSI lacked authority to modify the loan. This

Docket Entry No. 50, ¶¶ 2–3; Docket Entry No. 56, ¶¶ 1, 12). This court has already considered and rejected the claim that the foreclosure was wrongful because of the allegation that AHMSI did not hold the note at the time of the nonjudicial foreclosure:

> This allegation is precluded by the copy of the note th[at] AHMSI produced to Bittinger and that he attached to his amended complaint as Exhibit E. The holder of a note endorsed in blank is its owner. TEX. BUS. & COM. CODE §§ 3.205(b), 3.301. Bittinger's allegation that the foreclosure was wrongful because AHMSI did not own the note is dismissed, with prejudice, for failure to state a claim on which relief can be granted.

(Docket Entry No. 43, at 8). Despite this prior ruling, Bittinger asserts that the note was not endorsed in blank, but instead was endorsed to Option One. (Docket Entry No. 56, ¶ 12). The note's allonge contains the endorsement: "Pay to the order of:". The page is blank to the right of the colon, save for "Without Recourse" near the right alignment. The page also is blank in the lines immediately below the endorsement. An inch below that reads "Option One Mortgage Corporation" and, on the line below that, "A California Corporation." (*E.g.*, *id.*, Ex. 2A). At the motion hearing, Wells Fargo and AHMSI maintained their position that the note was endorsed in blank, pointing to the note itself. When asked by the court, Bittinger's counsel could not identify evidence supporting his argument that the note was endorsed to Option One. (Docket Entry No. 57).

Whether the note was or was not endorsed to Option One does not change the outcome. "The UCC defines 'person entitled to enforce' an instrument as a (i) the holder of the instrument, *(ii) a nonholder in possession of the instrument who has the rights of a holder*, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3.309

---

argument fails, however, because the "Security Instrument" is the *deed of trust*, not the promissory note. The promissory note, which provides for repayment terms, contains no such restrictions on modifications. The note was modified; the deed of trust was not.

or 3.418(d). TEX. BUS. & COM. CODE § 3.301." *Manley v. Wachovia Small Bus. Capital*, — S.W.3d —, 2011 WL 3832869, at *4 (Tex. App.—Dallas 2011, no pet.) (emphasis added). Texas law defines "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession[.]" TEX. BUS. & COM. CODE § 1.201(b)(21)(A); *Manley*, 2011 WL 3832869, at *4. "A person can become the holder of an instrument when the instrument is issued to that person; or he can become a holder by negotiation." *Leavings v. Mills*, 175 S.W.3d 307, 309 (Tex. App.—Houston [1st Dist.], no pet.) (citing TEX. BUS. & COM. CODE. § 3.201 cmt. 1 (2002)). "[N]egotiation requires transfer of possession of the instrument *and* its indorsement by the holder. If an instrument is payable to bearer [i.e., it is endorsed in blank], it may be negotiated by transfer alone." TEX. BUS. & COM. CODE. § 3.201(b) (emphasis added). "The indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed to it as to become part of it. If an instrument not in the possession of the original holder lacks a written indorsement and proof of the chain of title, the person in possession does not have the status of a holder." *Leavings*, 175 S.W.3d at 309 (internal citation omitted); *accord Beard v. Norwest Mortg., Inc.*, No. 10-06-00014-CV, 2007 WL 2051854, at *2 (Tex. App.—Waco July 18, 2007, pet. denied).

Texas law makes clear that a party does not have to be a holder to enforce an instrument. *See* TEX. BUS. & COM. CODE § 3.301(ii); *Manley*, 2011 WL 3832869, at *5 ("The owner of a note may enforce the note even if he is not a holder."); *see also, e.g.*, *SMS Fin., Ltd. Liab. Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 238 (5th Cir. 1999) (explaining that one of the elements for a plaintiff to enforce a promissory note is establishing "that the plaintiff is the *owner or* holder of the note" (emphasis added)). "[E]ven if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency

14

judgment under common-law principles of assignment." *Leavings*, 175 S.W.3d at 309; *accord, e.g.*, *Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 864 (Tex. App.—Dallas 2005, no pet.). The *Leavings* court explained how a party establishes that it is the owner of an instrument:

> A person not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which he acquired the note. An issue of material fact on the issue of ownership is presented when there is an unexplained gap in the chain of title.

*Id.* (internal citations omitted); *see also, e.g.*, *Falk v. Wells Fargo Bank*, No. 3:09-CV-678-B, 2011 WL 3702666, at *6 (N.D. Tex. Aug. 19, 2011); *Manley*, 2011 WL 3832869, at *5. Importantly, transfer of an instrument does not require the transferee to endorse that instrument. *In re Estate of Levinson*, Nos. 04-08-00782-CV, 04-08-00929-CV, 04-09-00092-CV, 2009 WL 3400935, at *3 (Tex. App.—San Antonio Oct. 21, 2009, no pet.) (citing *Leavings*, 175 S.W.3d at 309); *see also* TEX. BUS. & COM. CODE § 3.203 cmt. 2 (2011).[8]

For present purposes, there is only one meaningful difference between being a holder and an owner. A holder is presumed to be entitled to enforcement of the instrument merely by showing possession of that instrument. On the other hand, an owner does not receive such a presumption merely by showing possession; rather, as the previous paragraph demonstrates, an owner must prove the transfer by showing possession *and* establishing an unbroken chain of title. *See, e.g.*, TEX. BUS. & COM. CODE § 3.203 cmt. 2 (2011) ("Because the transferee is not a holder, there is no presumption

---

[8] The relevant part of the comment to § 3.203 reads:

> If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under Section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as holder.

TEX. BUS. & COM. CODE § 3.203 cmt. 2 (2011).

15

under Section 3-308 that the transferee, by producing the instrument, is entitled to payment. The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it."); *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995) ("In the absence of an indorsement, there is no presumption that the transferee of a note is its owner, and possession must then be demonstrated by proving the transaction whereby the note was acquired."); *Jernigan v. Bank One, Tex., N.A.*, 803 S.W.2d 774, 777 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (similar).

Bittinger contends that Wells Fargo and AHMSI were not entitled to enforce the note because the assignments of that note were not affixed to the note and allonge. (Docket Entry No. 56, ¶ 12). Bittinger in effect argues that Wells Fargo and AHMSI must be holders of the note to enforce it. But under Texas law, Wells Fargo and AHMSI as Wells Fargo's loan servicer[9] were entitled to enforce the note as either holders *or* owners. The competent summary judgment evidence shows that Wells Fargo is in physical possession of the note. Wells Fargo and AHSMI presented evidence demonstrating the chain of title to Wells Fargo and the appointment of AHMSI as the servicer. Bittinger has neither identified nor presented controverting evidence. Instead, he attempts to defeat summary judgment in three ways. The first is by the various objections to this evidence. This court has overruled those objections.

Bittinger's second attempt to defeat summary judgment is his argument that Wells Fargo and AHMSI "cannot vouch for any allegation, fact or instruction with regard to delinquency, default, foreclosure or most importantly the legal assignment of any instrument (Note)." (Docket Entry No.

---

[9] Under Texas law, "[a] mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee[.]" TEX. PROP. CODE § 51.0025.

16

56, ¶ 3; *see also id.*, ¶ 2). In support, he points to two sections of the PSA. The first section states that Wells Fargo "will not be responsible for the accuracy or content of any such resolutions, certificates, statements, opinions, reports, documents or other instruments." (Docket Entry No. 55, Ex. 2E, at 170). The second section states that Wells Fargo "shall at no time have any responsibility or liability for or with respect to the legality, validity and enforceability of any Mortgage or Mortgage Loan[.]" (*Id.*, at 173). These two sections are disclaimers and do not prohibit Wells Fargo (or AHMSI) from making representations about the mortgage loan.

Bittinger's third argument is that § 8.02 of the PSA prohibits Wells Fargo from bringing suit against him unless the "certificate holders" have authorized the litigation. (Docket Entry No. 56, ¶ 4). This argument is unpersuasive. This PSA section states that Wells Fargo is "under no obligation to . . . conduct or defend any litigation . . . at the request, order or direction of any of the Certificateholders or the NIMS Insurer . . . unless such Certificateholders or the NIMS insurer, as applicable shall have offered to [Wells Fargo] reasonable security or indemnity against the costs . . . " (Docket Entry No. 55, Ex. 2E, at 171). This section does not require Wells Fargo to receive authorization and security from the certificateholders every time it sues to enforce its rights under a mortgage loan. In sum, regardless of whether the note was endorsed in blank or to Option One, Wells Fargo and AHMSI are entitled to summary judgment on Bittinger's lack-of-authority theory.

### B. Inadequate Notice

Next, Bittinger argues that there are disputed facts material to determining whether he received adequate notice of foreclosure. Texas law allows mortgage servicers to foreclose on a mortgage loan on behalf of a mortgagee if: (1) the mortgagee and servicer have entered into a servicing agreement for that loan; and (2) the servicer provides "the notices required under Section

51.002(b)[,]" those notices disclose that the servicer represents the mortgagee under a servicing agreement, and those notices disclose either the mortgagee's or servicer's address. TEX. PROP. CODE § 51.0025; *Mortberg v. Litton Loan Servicing, L.P.*, No. 4:10-CV-668, 2011 WL 4431946, at *8 (E.D. Tex. Aug. 30, 2011), *adopted in* 2011 WL 4440170 (E.D. Tex. Sep. 22, 2011). Three notices of the foreclosure sale must be provided 21 days before the sale: a written notice, which also states the county in which the sale will take place, posted at the courthouse door of the property's county; a copy of that notice filed with the county clerk; and a written notice mailed to the debtor via certified mail. TEX. PROP. CODE § 51.002(b). Before providing these notices, however, the mortgage servicer must provide to the debtor, through certified mail, written notice "stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default[.]" TEX. PROP. CODE § 51.002(d); *Overholt v. Wells Fargo Bank, N.A.*, No. 4:10-CV-618, 2011 WL 4862525, at *5 (E.D. Tex. Sep. 2, 2011), *adopted in* 2011 WL 4862706 (E.D. Tex. Oct. 13, 2011). Notice to the debtor is satisfied so long as the notice is deposited for delivery to the debtor's last known address via certified mail. TEX. PROP. CODE § 51.002(e); *Hill v. Fremont Inv. & Loan*, No. 05-02-01438-CV, 2004 WL 1178607, at *3 (Tex. App.—Dallas May 28, 2004, no pet.) (citing, e.g., *Onwuteaka v. Cohen*, 848 S.W.2d 889, 882 (Tex. App.—Houston [1st Dist.] 1993, writ denied)).

In oral argument on the motion for summary judgment, Bittinger conceded that summary judgment against him on this theory was appropriate if the court overruled his objections to the summary judgment evidence, which the court has done. Even without this concession, the record clearly demonstrates that Wells Fargo and AHMSI complied with the notice requirements before foreclosing. Through counsel, AHSMI served notice of default to Bittinger via certified mail. This notice gave Bittinger 35 days to cure the default, stated that AHMSI was acting pursuant to its

servicing agreement with Wells Fargo, and provided AHMSI's address. (*E.g.*, Docket Entry No. 48, Ex. E). Again acting through counsel, AHMSI sent another letter to Bittinger via certified mail providing notice of loan-maturity acceleration and of the foreclosure sale, which would take place over a month after the letter's date. This letter again stated that AHMSI was acting pursuant to its servicing agreement with Wells Fargo, and provided AHMSI's address. The notice "enclosed a copy of the Notice of Foreclosure Sale, which is being posted at the Harris County Courthouse in accordance with Texas law and the provisions of the Deed of Trust." (*E.g.*, *id.*, Ex. F). The notice of foreclosure sale was filed with the Harris County Clerk. (*E.g.*, *id.*). Wells Fargo and AHMSI are entitled to summary judgment on the inadequate-notice theory.

### C. Miscalculation of Amounts Owed

Bittinger finally argues that there are disputed facts material to determining whether Wells Fargo and AHMSI miscalculated the amounts he owed under the mortgage loan and misapplied his payments toward the loan. Bittinger also conceded at the argument during the hearing that summary judgment against him on this theory was appropriate if the court overruled his evidentiary objections. Even without this concession, the record does not raise such a fact issue. (*See* Docket Entry No. 48, Ex. 1, ¶¶ 9–29; Exs. D, I–M). In opposing summary judgment, Bittinger did not contest—let alone cite to any contradicting record evidence, *see* FED R. CIV. P. 56(c)—Wells Fargo and AHMSI's evidence demonstrating that they correctly calculated the amounts Bittinger owed under the mortgage loan. Bittinger's complaints about miscalculations consist of nothing more than unsubstantiated assertions, *see Boudreaux*, 402 F.3d at 540, which the record contradicts. Wells Fargo and AHMSI are entitled to summary judgment on the miscalculation theory.

### IV. Conclusion

Bittinger's "motion to reinstate" his fraud claim, (Docket Entry No. 47), is denied. Wells Fargo and AHSMI's motion for summary judgment, (Docket Entry No. 48), is granted. Final judgment is entered by separate order.

SIGNED on November 8, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge